UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT MUTERSPAW,                           Case No. 1:10-cv-2

      Plaintiff,                                          Dlott, J.
                                                      Bowman, M.J.
     v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Robert E. Muterspaw filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled.  *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error.  In addition to filing a statement of errors, Plaintiff has filed in the alternative a motion to remand this case for consideration of "new and material medical evidence" (Doc. 8).  As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.  I further conclude that Plaintiff's alternative motion to remand for consideration of new evidence should be denied.

**I.  Summary of Administrative Record**

On July 11, 2006, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging a disability onset date of March 27, 2006, primarily due to back pain.  He was 55 years old at the time of the ALJ's denial decision.  After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an

1

Administrative Law Judge. On February 11, 2009, an evidentiary hearing was held in Dayton, Ohio, at which Plaintiff was represented by counsel. (Doc. 4-2 at 23-44). At the hearing, ALJ David Redmond heard testimony from Plaintiff and from William Braunig, a vocational expert.

On April 1, 2009, the ALJ entered his decision denying Plaintiff's DIB application. (Doc. 4-2 at 16-22). The Appeals Council denied his request for review. (Doc. 4-2 at 2-5). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since March 27, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: a vertebral disorder of the cervical spine with residuals of surgery and degenerative disc disease and degenerative joint disease of the lumbar spine (20 CFR 404.1521 *et seq.*).

   ……………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

   ………………………

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is limited to jobs that allow him to sit down for at least 15 minutes out of every hour of work in order to relieve pain, stiffness or other discomfort in his back and legs.
   ………………………..

> 6. The claimant is capable of performing past relevant work as a Lab Inspector, classified as skilled work at the light exertion level, and Machine Operator, classified as semiskilled work at the medium exertion level.
>
> …………………………
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from March 27, 2006 through the date of this decision (20 CFR 404.1565).

(Doc. 4-2, at 18-22). Thus, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to DIB.

On appeal to this court, Plaintiff maintains that the ALJ erred by: 1) failing to find any limitations on kneeling, crouching, and reaching to perform past work; 2) improperly evaluating the opinions of Drs. Ray and McCloud; and 3) inadequately assessing Plaintiff's pain and credibility.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5 if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

In this case, Plaintiff alleges that errors at the fourth step of the sequential analysis require this court to reverse the Commissioner's decision and award benefits. Specifically, Plaintiff argues that the ALJ erred: 1) by failing to find limitations in Plaintiff's ability to reach, kneel and crouch; 2) by improperly discounting limitations found by two consulting physicians; and 3) by improperly evaluating Plaintiff's pain and credibility. In his alternative motion to remand, Plaintiff argues that, to the extent that this court believes that the record does not justify an immediate award of benefits, the discovery of new evidence requires this court to remand to the Defendant under sentence six of 42 U.S.C. §405(g).

**B.     The ALJ's Failure to Include Reaching, Kneeling, and Crouching Limitations in Plaintiff's Residual Functional Capacity**

Plaintiff's first and second assignments of error are closely related and therefore will be addressed together. In both, Plaintiff complains that the ALJ erred by failing to include limitations on reaching, kneeling and crouching that were included in assessments from two consulting physicians, Dr. McCloud and Dr. Ray, respectively.

Plaintiff's primary complaints relate to lower back pain. A CT scan performed in September 2005 verified the presence of some degenerative disc disease, and Plaintiff is under the care of a pain specialist who has prescribed morphine, MS Contin,

5

Voltaren, and Lidoderm patches.  (Doc. 4-2 at 31).  Plaintiff also underwent surgery for a herniated disc in his neck in May 2005.

To evaluate Plaintiff's claim, Dr. Jerry McCloud conducted a review of written records on behalf of the Social Security Administration.  Following that review, on September 2, 2006, Dr. McCloud completed a physical residual functional capacity assessment ("RFC report")(Doc. 4-7 at 234-241).  In his report, Dr. McCloud opined that Plaintiff could lift 10-20 pounds, and that he could sit 6 hours out of an 8 hour day and could stand and/or walk the same period of time.  (*Id*. at 235).  Dr. McCloud stated that Plaintiff could only stoop or crouch occasionally, but that he could frequently balance, kneel and crawl, and could occasionally climb ramps and stairs, stoop, and crouch.  (*Id*. at 236).  Notably, Dr. McCloud's assessment of Plaintiff's limitations did not include any restrictions on Plaintiff's reaching abilities.  (*Id*. at 237).

Dr. Gary Ray was also a consulting and not a treating physician.  He examined Plaintiff in December 2008 and found tenderness of the "midline lumbosacral area" and 1+ reflexes at the biceps, triceps and ankles, with normal 2+ reflexes at the knees.[1]  (Doc. 4-7 at 304-305).  However, Plaintiff had "no tenderness" in the cervical or right and left lumbosacral paraspinal areas.  (*Id*.).  During the exam, Plaintiff reported good motion of the cervical spine and denied any upper extremity pain or numbness (*Id*. at 304).  Dr. Ray concluded that Plaintiff could sit for up to six hours in an eight-hour workday, could stand for up to four hours during the same period, and could sit, stand, or walk for one hour without interruption.  (*Id*. at 307).  Dr. Ray further opined that Plaintiff could continuously lift and carry 10 pounds, and could occasionally lift and carry

---

[1] According to information available from the National Institutes of Health, 1+ deep tendon reflexes "may or may not be normal."  See www.ncbi.nlm.nih.gov/books/WBK396.

6

20 pounds. (*Id*. at 306). He stated that Plaintiff had no difficulty gripping and manipulating with his hands. (*Id*. at 305). Dr. Ray administered manual muscle testing and found normal results for shoulders, elbows, fingers, knees, wrists, hips, with no muscle spasms and no muscle atrophy of any kind. Range of motion tests for shoulders, elbows, wrists and fingers also were within normal limits. (*Id*. at 312-314). Nevertheless, Dr. Ray opined - contrary to Dr. McCloud - that Plaintiff could never push/pull, reach, kneel or crawl on a job. (*Id*. at 308-309). Also contrary to Dr. McCloud, Dr. Ray stated that Plaintiff could frequently crouch.

Plaintiff's July 2006 application for DIB stated that he had back pain on bending forward at the waist or on standing more than one hour on a hard floor, and that he had only 1-2 good days a week with his low back pain. (Doc. 4-6 at 30-31). He also stated that he had knee pain at that time. (*Id*.). At the evidentiary hearing on February 11, 2009, Plaintiff testified that when his back was "very severe," sometimes the pain would radiate to his knees. (Doc. 4-2 at 30). He testified that he could stand or walk for 45 minutes and sit the same amount of time (Doc. 4-2 at 32). Plaintiff testified that his pain level "comes and goes, gets better and worse," but never completely goes away. (*Id*. at 31). However, he also testified that he has received epidural injections that have been effective. (Doc. 4-2 at 37). Plaintiff confirmed that his past relevant work required him to bend, stoop, reach, squat and kneel, as well as reaching for up to 6 hours per day. (*Id*. at 20, 34).

Plaintiff argues that the ALJ should have accepted the most severe reaching, crouching, and kneeling restrictions offered by either of these two consulting physicians when determining Plaintiff's residual functional capacity ("RFC"). Plaintiff argues that

7

the error was material, because Plaintiff's past work involved kneeling 3-4 hours per day, crouching 2-3 hours per day, and reaching 4-6 hours per day. (Doc. 4-2 at 42). The vocational expert confirmed that Plaintiff's past position at the foundry involved 4-5 hours of reaching. (*Id*.). Plaintiff contends that he would be precluded from performing his past relevant work due to the amount of kneeling, crouching, and reaching that would be required.

Contrary to Plaintiff's argument, the vocational expert ("VE") did not testify - and the ALJ did not find- that Plaintiff could perform *all* of the exact jobs that Plaintiff previously held. Instead, he included Plaintiff's past job of lab tester as falling within the light work classification that Plaintiff could perform based on documentation in which Plaintiff himself described that work, even though Plaintiff's subsequent oral testimony suggested the possibility of a heavier work classification. (*Id*. at 42). The VE explained that even though Plaintiff's prior "lab tester" position at the foundry may have involved kneeling, crouching, and reaching, "[t]he posturals are not necessarily a requirement as identified in the classification of jobs" for lab tester. (*Id*. at 42). Additionally, the VE testified that Plaintiff could perform 18,000 other "light work" positions, including office helper, bench assembler, and mail sorter. (*Id*. at 41, 43).

Plaintiff also protests that Dr. McCloud's assessment that he could only sit and stand/walk for 6 hours per day and Dr. Ray's assessment that he could only stand for four hours and walk for one hour would preclude all past relevant work as a machine operator and/or lab tester. Again, Plaintiff focuses too much on his precise past positions. The ALJ did not find that Plaintiff could perform his past work as a machine operator; the VE testified he could not. (Doc. 4-2 at 40). Rather, the ALJ found that

8

Plaintiff could perform the job of lab tester in the light work category after confirming that the VE included only positions that Plaintiff could perform with 15 minutes of sitting each hour, or standing no more than 45 minutes at a time. (*Id.*). Thus, the ALJ's findings accounted for the sitting/standing/walking limitations by Dr. McCloud, though not the more restrictive postural limitations suggested by Dr. Ray.

Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-31 (6th Cir. 1990)(affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine). Ultimately the determination of a claimant's RFC is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2).

The ALJ's explanation of how he determined Plaintiff's RFC in this case was exceptionally detailed, and is set out in full below:

> The residual functional capacity assessment set forth above is based in part on an assessment by a State Agency reviewing physician, Jerry McCloud, MD, and the objective medical findings reported by Dr. Ray and the claimant's treating physician, Dr. Wourms...as well as on the testimony by the claimant concerning his functional capacities and the requirements of the work which he engaged in prior to leaving his job. However, little weight is given to Dr. Ray's opinion that the claimant could never do any reaching or to Dr. McCloud's assessment of postural restrictions, because those restrictions are not supported by the objective medical findings and they are inconsistent with the claimant's testimony.
>
> Furthermore, although Dr. McCloud did not include a restriction to jobs that allow periodically alternating between sitting and standing to relieve pain and discomfort, the objective medical findings with respect to the clamant's back, together with claimant's testimony regarding his prior job activities and current functional capacities, are consistent with an ability to perform work at the light exertional level with the sit/stand option described above. Whatever limitations the claimant may have had due to

9

his medical condition did not prevent him from doing his job which required a substantial amount of reaching. Accordingly, no restriction with respect to reaching has been included in my determination of the claimant [sic] residual functional capacity. The claimant conceded that he could lift 10 o 20 pounds, which is consistent with work at the light exertional level as defined in Social Security Regulations.

While I concede as a general proposition that an inability to do any reaching would seem to preclude competitive employment, the claimant was obviously able to do whatever reaching his job of Lab Inspector required of him at the steel mill. That was [the] last job he held, and he left that job voluntarily (or possibly as part of some sort of negotiated settlement of a labor dispute) rather than for medical reasons. Furthermore, there is nothing in Dr. Ray's report or the rest of the medical record suggesting any clinical basis for Dr. Ray's conclusion that the claimant could never do any reaching.

Dr. Ray performed range of motion testing on the claimant, and although he found some minor limitations in range of motion in the claimant's cervical and lumbar spine, he found normal strength and range of motion in the claimant's shoulders, elbows, and wrists. Additionally, the above residual functional capacity is consistent with the claimant's statements to Dr. Ray that he could lift up to 20 pounds and that he could stand or walk for up to 45 minutes at a time.

In sum, the above functional capacity assessment is supported by the objective medical evidence and clinical findings throughout the record, and partly by the Physical Residual Functional Capacity Assessment of W. Jerry McCloud MD....

The opinion of Dr. McCloud is given some weight, because it is supported by the objective medical evidence in the record, including most of Dr. Ray's findings. Dr. Ray's opinion is given less weight, because he said that the claimant could only stand and walk for 5 hours in a work day (he also said that the claimant could sit for up to 6 hours in a workday) and he could do so for an hour at a time. Dr. Ray's opinion concerning the claimant's residual functional capacity is very close to the findings herein and close to the assessment by Dr. McCloud. However, Dr. Ray's opinion about the length of time the claimant could stand or walk is only 1 hour shorter than has been found, and his opinion that the claimant could stand or walk for 1 hour at a time is opposed to my finding that the claimant should only stand or walk for 45 minutes each hour. In that regard, Dr. Ray's opinion is given some weight, though I have not totally adopted his assessment. The biggest problem with Dr. Ray's assessment is that he indicated that the claimant could never reach, push, or pull with either upper extremity, though he conceded that the claimant could lift or carry

10

>up to 20 pounds occasionally. To reiterate, there is nothing in Dr. Ray's report or in the other medical evidence concerning the claimant's spinal impairments or his upper extremities that give any clinical basis for the conclusion that the claimant could never do any reaching.

(Doc. 4-2 at 20-21).

Obviously, Dr. McCloud's and Dr. Ray's assessments offered diametrically opposed views on the "reaching, kneeling, crouching" restrictions that Plaintiff now charges it was error to fail to include. Dr. Ray would have prohibited Plaintiff from any reaching, while Dr. McCloud indicated no reaching restrictions at all. Dr. McCloud opined that Plaintiff could frequently kneel, while Dr. Ray suggested that Plaintiff should *never* kneel. Dr. McCloud opined that Plaintiff could occasionally crouch, while Dr. Ray suggested that Plaintiff retained the ability to frequently crouch. It was incumbent upon the ALJ to resolve these significant inconsistencies, and as his opinion reflects, he did so based on objective medical evidence, Plaintiff's own testimony, and the record as a whole.

I conclude from a review of the records and testimony that substantial evidence supports the ALJ's RFC assessment. Both Dr. Ray's own manual muscle testing records and Plaintiff's testimony concerning his daily activities support the ALJ's findings that Plaintiff had no significant limitations on reaching, kneeling, or crouching. Plaintiff's testimony and Dr. McCloud's report also support the ALJ's conclusion that Plaintiff was capable of standing and/or walking for six hours per day. If an ALJ accurately describes a plaintiff's RFC when formulating a description of limitations to a vocational expert, then the ALJ's conclusion will be supported by substantial evidence. *See Varley v. Secretary of Health and Human Serv.*, 820 F.2d 777, 779 (6th Cir. 1987).

### C. Credibility Assessment and Evaluation of Pain

Plaintiff's last statement of error finds fault with the ALJ's conclusion that his testimony was not entirely credible. Specifically, Plaintiff claims that the ALJ failed to consider all the factors listed in 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the... residual functional capacity assessment" discussed above. (Doc. 4-2 at 20)

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, *Jones v. Comm'r v. Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Substantial evidence supports the ALJ's finding that Plaintiff's claimed limitations conflict with other evidence in the record. The severity of Plaintiff's reported level of pain was contrary to evidence that he quit his prior job due to a labor dispute, not because he could no longer perform the job. Plaintiff also testified at the hearing that he engaged in extensive daily activities, including housework, socializing with friends, going to church two or three times per week or more, visiting "shut-ins," and taking turns caring for his 91 year old mother so that she can stay out of a nursing home. (Doc. 4-2 at 32-33). Plaintiff's testified that he does yard work and can drive up to 100 miles at a time. (*Id.*).

Although the ALJ did not provide detailed reasons for discounting plaintiff's credibility, any error is harmless in this case. *See Spicer v. Apfel*, 15 Fed. App'x 227, 234 (6th Cir. July 16, 2001) (finding harmless error where the ALJ did not provide detailed reasons for his credibility assessment because the ALJ had considered the claimant's subjective complaints but ultimately gave more weight to the objective medical evidence). As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports the ALJ's decision to discredit plaintiff's statements about the severity of his symptoms.

**D. Sentence Six Remand**

In the event that this court does not find grounds for reversal of Defendant's denial of benefits, Plaintiff has filed an alternative motion seeking remand under sentence six of 42 U.S.C. §405(g).  Plaintiff's motion includes as an attachment an MRI report dated July 2009 which shows several disc protrusions/herniations, along with mild to moderate facet arthropathy.  The report reflects that Plaintiff's back condition "appear[s] to have significantly progressed" from the previous MRI report dating to March 2005. (Doc. 8 at 8).

This Court may consider the July 2009 MRI only for purposes of the requested sentence six remand, not for purposes of evaluating whether substantial evidence existed for the Defendant's previous denial of benefits.  *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).  In order to obtain a sentence six remand, Plaintiff must demonstrate that the new MRI is material, in the sense that there is a "reasonable probability" that the ALJ would have reached a different decision if presented with the new evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711-12 (6th Cir. 1988).  In addition, Plaintiff must demonstrate that there was good cause for his failure to earlier present the evidence to ALJ Redmond.  42 U.S.C. §405(g).

In this case, Plaintiff is not entitled to remand under sentence six.  While the recent MRI suggests that Plaintiff's back condition has "significantly progressed" since an MRI taken four and a half years earlier, the 2009 MRI says nothing about "the point in time that the disability itself began." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d at 712.  For that reason, "[r]eviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition." *Id.* (citations omitted).

Of course, to the extent that the 2009 MRI is relevant, Plaintiff retains the option of filing a new claim for disability insurance benefits for a subsequent time period. *See Jones v. Comm'r v. Soc. Sec.*, 336 F.3d at 478.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED:**

1. That Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **BE AFFIRMED**;

2. That Plaintiff's motion for a sentence six remand pursuant to 42 U.S.C. §405(g) (Doc. 8) **BE DENIED**; and

3. That this case be **CLOSED.**

                                                        /s Stephanie K. Bowman
                                                        Stephanie K. Bowman
                                                        United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| ROBERT MUTERSPAW, | Case No. 1:10-cv-2 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

16